J-S27033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RONALD ANGLE, JR., C/O SHARON ANGLE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MATTHEW AND ARLENE SMITH, | |
| Appellants | No. 1934 EDA 2016 |

Appeal from the Judgment Entered August 31, 2016
in the Court of Common Pleas of Northampton County
Civil Division at No.: C-48-CV-2014 6431

BEFORE:  GANTMAN, P.J., OTT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MAY 05, 2017**

Appellants, Matthew and Arlene Smith, appeal from the judgment[1] entered against them and in favor of Appellee, Ronald Angle, Jr., c/o Sharon Angle, in the amount of $7,740.19.  We affirm of the basis of the trial court opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellants purported to appeal from the order denying their post-trial motions, before judgment was entered.  On August 23, 2016, this Court ordered Appellants to file a *praecipe* to enter judgment.  On August 31, 2016, Appellants filed the *praecipe*, and we treat the appeal as timely filed after the final judgment was entered.  **See** Pa.R.A.P. 905(a)(5).  We have amended the caption accordingly.

The trial court opinion fully and correctly sets forth the underlying facts and procedure of this case. (*See* Trial Court Opinion, 7/25/16, at 2-13). Therefore, we have no reason to re-state them here.

However, for the reader's information, we provide the following condensed recitation, which we take from the trial court's opinion and our review of the certified record. On February 28, 2009, the parties entered into an installment contract for the sale of certain real estate. Pursuant to the contract's terms, Appellants, who lived on the property, agreed to purchase it for $149,500.00, by paying $1,370.34 per month, plus ten percent interest, for twenty years. (*See* Agreement, 2/28/09, at unnumbered page 1 ¶ 2). Appellants also made a $7,500.00 down payment. They were buying the property in "as i[s]" condition, and were responsible for the timely payment of all taxes, municipal charges, and insurance premiums related to the property. (*Id.* at unnumbered page 2 ¶ 5; *see id.* at ¶ 4). Appellants were required to keep the property in good condition, and were not to make substantial alterations without prior written consent. (*See id.* at ¶ 6).

In January 2013, Appellee entered into a consent agreement and order with the Pennsylvania Department of Banking. The consent agreement stated that the installment contract's ten percent interest rate exceeded the allowable interest rate of five and a quarter percent. As part of the consent agreement, Appellee agreed to amend the installment contract to bring it

into compliance with Pennsylvania law. Thereafter, he amended the Agreement, but Appellants refused to sign it because "they didn't want the banking department heckling them and bothering them." (N.T. Trial, 1/12/16, at 29).

Appellants, who continued to reside on the property, failed to pay the 2013 property taxes in the amount of $2,271.19, or to make any rental/purchase payments for the period of June 2013 through September 2013, for a total of an additional $5,481.36. Appellants vacated the property in October 2013. On October 15, 2013, Appellee received a letter from Appellants' counsel offering to pay $7,500.00 in full satisfaction of the matter. Upon receiving the letter, Appellee called counsel's office, and left a message that he accepted the offer, and sent the acceptance in writing. On October 24, 2013, Appellee received another letter from counsel stating that the prior letter contained an error and that Appellants had intended to offer only $500.00 in settlement, not the amount previously offered.

On July 10, 2014, Appellee filed a complaint against Appellants for breach of contract on the basis of the settlement agreement. An arbitration hearing on the complaint was held on June 16, 2015, and the panel found in favor of Appellants, and against Appellee. Appellee appealed to the trial court, and, on October 30, 2015, filed an amended complaint adding a count for *quantum meruit*, alleging that Appellee conferred a benefit on Appellants by allowing them to live on the property in June, July, August, and

September of 2013, without paying the rental/mortgage or the taxes. The trial court held a non-jury trial on January 12, 2016, and, on January 21, 2016, the court filed a verdict in favor of Appellee and against Appellants, in the amount of $7,740.19, plus costs and interest. Appellants filed post-verdict motions that the court denied on May 24, 2016. Appellants timely appealed.[2, 3]

Appellants raise three issues for this Court's review:

A. [Whether Appellee is] entitled to an award based on the breach of contract in the amount seven thousand five hundred and no/100 ($7,500.00) dollars?

B. [Whether] the installment sales agreement [is] void pursuant to the Department of Banking consent agreement and order in that it was noncompliant with the laws of the Commonwealth of Pennsylvania set forth in the consent agreement and order?

---

[2] Appellants filed a timely statement of errors complained of on July 15, 2016, pursuant to the trial court's order. The court filed an opinion on July 25, 2016. **See** Pa.R.A.P. 1925.

[3] Appellants raised seventeen alleged errors in their Rule 1925(b) statement. (**See** Appellants' Concise Statement of [Errors] Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), at unnumbered pages 1-3). This does not comply with the purpose of the Rule. **See Burgoyne v. Pinecrest Community Ass'n.**, 924 A.2d 675, 678 n.1 (Pa. Super. 2007) ("The Rule 1925(b) statement must be detailed enough so that the judge can write a Rule 1925(a) opinion, but not so lengthy that it does not meet the goal of narrowing down the issues previously raised to the few that are likely to be presented to the appellate court without giving the trial judge volumes to plow through.") (citation omitted).

C.    [Whether Appellee is] entitled to the amount of seven thousand seven hundred forty and 19/100 dollars on the basis of count II of quantum meruit?

(Appellants' Brief, at 12) (some capitalization omitted).[4]

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude that there is no merit to any of the issues Appellants have raised on appeal, and that the trial court properly found in favor of Appellee. (*See* Trial Ct. Op., at 16-40) (finding: (1) Appellants offered to settle matter when counsel sent settlement letter to Appellee; (2) Appellee accepted offer; (3) there was consideration; (4) Appellants breached settlement agreement; (5) Appellee presented clear and convincing evidence that he suffered damages beyond amount offered by settlement agreement; (6) Appellants' testimony was not credible; (7) Appellee's testimony was credible; (8) original sales agreement was valid where illegal interest provision did not defeat primary purpose of agreement; (9) even if there was no settlement contract, Appellee is entitled to relief under theory of *quantum meruit* where Appellants received the

_____

[4] We could deem Appellants' first two issues waived because they provide no pertinent discussion or legal authority. (*See* Appellants' Brief, at 12-16); *see also Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009), *cert. denied*, 562 U.S. 906 (2010) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citation omitted). However, because we affirm on the well-reasoned and thorough decision of the trial court, we decline to do so.

- 5 -

benefit of living on property for months without paying rent or taxes).

Accordingly, we affirm on the basis of the trial court's opinion.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/5/2017

**IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY**
**COMMONWEALTH OF PENNSYLVANIA**
**CIVIL DIVISION - LAW**

RONALD ANGLE JR.
C/O SHARON ANGLE,

        Plaintiff,

        vs.

MATTHEW AND ARLENE SMITH,

        Defendant.

No.: C-48-CV-2014-6431

## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a) STATEMENT

**AND NOW,** this 25th day of July, 2016, the court issues the following statement:

On June 24, 2016, Defendants Matthew and Arlene Smith (collectively, the "Smiths") filed a timely Notice of Appeal to the Superior Court of Pennsylvania from the verdict entered in favor of Plaintiff Ronald Angle Jr., c/o Sharon Angle ("Angle") on January 21, 2016.[1] On July 15, we received the Smiths' Concise Statement of Errors Complained of on Appeal.

---

[1] Our review of the docket in this matter indicates that judgment has not been entered. *See* Civil Docket, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Jul. 25, 2016). Procedurally, a party cannot appeal an order until it has been entered "upon the appropriate docket in the lower court." Pa. R.A.P. No. 301(a)(1). Therefore, because the Smiths did not have judgment entered prior to the Smiths filing this appeal, we respectfully submit that their appeal should be quashed. *See Johnson the Florist, Inc. v. Tedco Constr. Corp.*, 657 A.2d 511 (Pa. Super. 1995) (stating that there is no authority for Superior Court to review the merits of an appeal in light of a refusal by the parties to enter judgment).

For the reasons that follow, we respectfully suggest that the Smiths' appeal lacks merit and should be dismissed.

## BACKGROUND

### I.     Angle's Breach of Contract Action

On July 10, 2014, Angle commenced this action by filing a complaint as power of attorney on behalf of her son, Ronald Angle, Jr. *See* Complaint at ¶ 2, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Jul. 10, 2014) ("Angle Complaint"). The Smiths are the former residents of a property located at 1364 Jacobsburg Road, Wind Gap, Northampton County, Pennsylvania (the "Property"). *See* Angle Complaint at ¶ 3. Ronald Angle, Jr. and Ronald Angle, Sr. ("Mr. Angle") (collectively, the "Angles") are the title owners of the Property. *See* Angle Complaint at ¶ 6.

Through the complaint, Angle brought an action for breach of contract, alleging that the Smiths, through their attorney, made a written settlement offer of $7,500 to settle a dispute related to the Smiths' failure to make monthly payments and pay property taxes for the Property. *See* Angle Complaint at ¶¶ 12. Angle averred that she accepted this offer through a telephone call and by written correspondence, but that the Smiths had breached the contract by failing to remit the settlement offer. *See* Angle Complaint at ¶¶ 21.

The Smiths responded to Angle's complaint by denying Angle's averments in support of the action for breach of contract. *See* Answer and

2

New Matter, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Sept. 2, 2014) ("Smith Answer"). Additionally, through their New Matter, the Smiths asserted that they were not liable for payments under the Agreement because 1) the Agreement was declared illegal by the Department of Banking, and is therefore unenforceable; 2) all monies owed under the Agreement were discharged in the Smiths' bankruptcy action; 3) the Agreement was illegal and unenforceable because Angle never provided the Smiths with a seller's disclosure agreement; and 4) a contract was not created by the settlement offer of $7,500 because the Smiths' attorney did not have authority to offer $7,500 and the conveyance of the $7,500 offer was the result of a mistake. *See* Smith Answer.

II.    Arbitration

On June 16, 2015, the parties appeared before a panel of arbitrators. *See* Praecipe for Arbitration, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Jan. 29, 2015). Following the arbitration hearing, the arbitrators entered judgment in favor of the Smiths, and against Angle. *See* Award, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Jun. 16, 2015). On September 8, 2015, Angle filed a Notice of Appeal from the arbitrators' judgment. *See* Notice of Appeal from Award of Arbitrators, *Angle v. Smith*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Sept. 8, 2015). Additionally, on October 30, 2015, Angle amended the Complaint to include a count for *quantum meruit*, alleging that

3
R-223a

Angle conferred a benefit to the Smiths by allowing them to live at the Property in June, July, August, and September of 2013. *See* Amended Complaint at ¶ 22, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Oct. 30, 2015) ("Angle Amended Complaint"). Further, Angle alleged that the Smiths were liable under a theory of *quantum meruit* because they unjustly appreciated the benefit by failing to pay the taxes and mortgage of the Property. *See* Angle Amended Complaint at ¶¶ 23-24. The Smiths responded on January 7, 2016, by filing an Answer and New Matter to Angle's Amended Complaint. *See* Answer and New Matter to Amended Complaint, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Jan. 7, 2016) ("Answer Am. Comp."). Through their Answer, the Smiths denied all of Angle's assertions in the *quantum meruit* count. *See* Answer Am. Comp.

### III. Non-Jury Trial

On January 12, 2016, this matter was assigned to the Honorable Michael J. Koury, Jr. from the Northampton County's Non-Jury Trial List. *See generally* Transcript of Proceedings of Jan. 12, 2016, *Angle v. Smith*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Mar. 31, 2016) ("N.T."). Angle and Mr. Angle testified regarding Angle's claims, and Arlene Smith ("Mrs. Smith") testified on her own behalf. *See generally* N.T.

A. *Ronald Angle, Sr.'s Testimony*

Mr. Angle testified that on February 28, 2009 he entered into an installment land contract with the Smiths for the Property. *See id.* at 16; *see also* N.T. at 18, P. Ex. 1, Agreement, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Mar. 31, 2016) ("Sales Agreement"). Through the Sales Agreement, the Smiths agreed to purchase the Property for $149,500, with a $7,500 down payment, a ten percent interest rate, and monthly payments of $1,370.34 for a twenty year period. *See* N.T. at 18; Sales Agreement at ¶ 2. After the twenty year period, if the Smiths made payments in accordance with the Sales Agreement, they would receive the deed to the Property with a clear and marketable title. *See* N.T. at 15. In addition to monthly payments, the Sales Agreement specified that the Smiths were buying the Property in an "as is" condition, and were responsible for the timely payment of all taxes, municipal charges, and insurance premiums related to the Property. *See id.* at 19.

In January of 2013, Mr. Angle entered into a Consent Agreement and Order with the Pennsylvania Department of Banking. *See id.* at 20; *see also* N.T. at 20, P. Ex. 2, Consent Agreement and Order dated Jan. 13, 2013, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Mar. 31, 2016)("Consent Agreement"). The Consent Agreement noted that the Sales Agreement included provisions which violated Pennsylvania law. *See* Consent Agreement at ¶¶ 23, 24, 28. Specifically, the Consent Agreement

noted that the interest payment of ten percent in the Sales Agreement exceeded the five and a quarter percent allowable interest rate under the Loan Interest and Protection Law. *See* Consent Agreement at ¶ 36; *see also* 41. P.S. §301. As part of the Consent Agreement, Mr. Angle agreed to re-execute or amend the Sales Agreement to bring it into compliance with existing law within thirty days. *See* Consent Agreement at ¶ 22. Following the issuance of the Consent Agreement, Mr. Angle testified that he contacted his attorney to alter the terms of the Sales Agreement pursuant to the Pennsylvania Department of Banking's requests in the Consent Agreement. *See id.* at 24. Mr. Angle's attorney amended the Sales Agreement as requested, and sent the the amended Sales Agreement to the Smiths for their review and signature. *See id.* at 24; *see also* N.T. at 24, P. Ex. 3, Sales Agreement, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Mar. 31, 2016) ("Amended Sales Agreement"). Additionally, Mr. Angle claimed that he personally delivered the Amended Sales Agreement to the Smiths prior to the thirty date deadline in the Consent Agreement. *See* N.T. at 29. Mr. Angle recalled that the Smiths refused to sign the Amended Sales Agreement because "they didn't want the banking department heckling them and bothering them." *Id.*

On February 26, 2013, Mr. Angle received a letter from the Smiths stating that they were advised by their attorney, John Molnar, Esq. ("Attorney Molnar"), to avoid making changes to the Sales Agreement due to

the Smiths' pending bankruptcy case. *See id.* at 30; *see also* N.T. at 30, P. Ex. 4, Letter dated Feb. 26, 2013, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Mar. 31, 2016)("Smith Ltr."). However, the Smiths did not notify Mr. Angle, or ask to execute the Amended Sales Agreement, following their discharge from bankruptcy. *See id.* at 31. Mr. Angle recalled that the Smiths vacated the Property in late 2013 following a few months during which they failed to make monthly payments. *See id.* at 32. On cross-examination, Mr. Angle admitted that he did not execute a seller property disclosure statement at the time the original Sales Agreement was executed, and that he did not send the Smiths thirty days written notice of the Smiths' late payments prior to the Smiths vacating the Property. *See id.* at 33-34.

### B. *Mrs. Angle's Testimony*

Angle testified that she was responsible for managing the monthly payments from the Smiths related to the Property. *See id.* at 39. On April 19, 2013, Angle received an agreement of sale from Mrs. Smith proposing that Mrs. Smith's mother would mortgage the amount the Smiths owed the Angles under the Sales Agreement. *See id.* at 36; *see also* N.T. at 36, P. Ex. 6, Smiths' Agreement of Sale, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Mar. 31, 2016). However, Angle testified that the Property was never transferred to Mrs. Smith's mother pursuant to Mrs. Smith's proposal. *See* N.T. at 38.

Shortly thereafter, Angle noted that the Smiths did not make their monthly payments to Angle for the months of June, July, August, or September of 2013. *See id.* at 39. Angle contacted Mrs. Smith in June of 2013 concerning the Smiths' failure to make the monthly payments. *See id.* at 40. Mrs. Smith indicated that they were using the monthly payment money to improve the Property in an attempt to receive a new mortgage for the Property. *See id.* However, Mrs. Smith informed Angle that the Smiths would pay Angle the past amounts due even if they did not qualify for a new mortgage on the Property. *See id.* The Smiths ultimately vacated the Property in October of 2013 without compensating Angle for the four months of unpaid monthly payments, totaling $5,481.36, or the taxes for the Property in 2013, totaling $2,271.19. *See id.* at 41, 47; *see also* N.T. at 47, P. Ex. 10, County, School District, Township, and Fire Hydrant Tax Receipts, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Mar. 31, 2016).

On October 15, 2013, Angle received a letter from Attorney Molnar stating that he did not believe the Sales Agreement was valid, but that the Smiths were prepared to offer $7,500 in full satisfaction of the matter. *See id.* at 41-42; *see also* N.T. at 41, P. Ex. 7, Letter dated Oct. 15, 2013, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Mar. 31, 2016) ("Molnar Ltr. 1"). Following receipt of the letter, Angle placed a telephone call to Attorney Molnar's law office and informed his secretary that

she accepted the $7,500 settlement offer. *See id.* at 43. Angle was informed that Attorney Molnar would return her telephone call. *See id.* at 43-44. Angle never received a telephone call from Attorney Molnar. *See id.* at 43-44. The following day, Angle wrote a letter to the Smiths accepting the $7,500 settlement offer. *See id.* at 44; *see also* N.T. at 44, P. Ex. 8, Letter dated Oct. 16, 2013, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Mar. 31, 2016) ("Angle Ltr."). Angle addressed this letter to the Smiths at the Property address because Angle did not know the Smiths' new address. *See id.* at 44-45. However, Angle believed this letter would reach the Smiths via the U.S. Postal Service. *See id.* at 44-45.

On October 24, 2013, Angle received a second letter from Attorney Molnar, stating that the previous letter contained an error, and that the Smiths intended to offer Angle $500 rather than $7,500 in settlement for the alleged unpaid monthly payments. *See id.* at 45; *see also* N.T. at 45, P. Ex. 9, Letter dated Oct. 24, 2013, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Mar. 31, 2016) ("Molnar Ltr. 2"). Angle testified that she would not have accepted the Smiths' settlement offer of $500. *See id.* at 46.

C. *Mrs. Smith's Testimony*

Mrs. Smith testified that the Smiths entered into the Sales Agreement for the Property with Angle because previous financial difficulties limited their ability to purchase a home. *See id.* at 64-65. Mrs. Smith confirmed

that, under the Sales Agreement, the Smiths would make monthly payments of $1,370.34, purchase the Property in "as is" condition, and pay all of the real estate taxes associated with the Property. *See id.* at 64-65. Further, through Mrs. Smith's previous experience as a real estate agent, Mrs .Smith confirmed that she was familiar with the purpose of a Seller's Disclosure Statement, but did not receive a Seller's Disclosure Statement or request one from Angle at the time the Sales Agreement was executed. *See id.* at 56, 66.

The Smiths resided at the Property for approximately four years. *See generally* N.T. During this time period, Mrs. Smith testified that they expended approximately $5,000 improving the Property. *See id.* at 56. Mrs. Smith recounted that the improvements included replacing drywall and flooring, renovating a bathroom, converting part of the basement into a bedroom, and removing a dilapidated deck. *See id.* at 56.

On December 31, 2012, the Smiths filed a petition in bankruptcy. *See id.* at 66-67; *see also* N.T. at 66, P. Ex. 11, Bankruptcy Petition, *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Mar. 31, 2016). Through the Smith's Bankruptcy Petition, the Smiths acknowledged that they intended to reaffirm the debt associated with the Sales Agreement following their discharge from bankruptcy. *See* N.T. at 68; *see also* Bankruptcy Petition at 42. The Smiths received a bankruptcy discharge on April 19, 2013. *See* N.T. at 58, D. Ex. 2, Bankruptcy Discharge, *Angle v.*

10
R-230a

*Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Mar. 31, 2016). Through their Bankruptcy Discharge, the Smiths acknowledged that they had given up discharge protection in relation to the Sales Agreement by signing a reaffirmation agreement. *See id.* at 71.

In January or February of 2013, Mrs. Smith met with Mr. Angle at his attorney's office. *See id.* at 57. Mrs. Smith denied that Mr. Angle presented her with a copy of the Amended Sales Agreement, but brought a letter with her to the office stating that the Smiths were not accepting the Amended Sales Agreement required by the Pennsylvania Department of Banking. *See id.* at 57, 72; *see also* Smith Ltr. Mrs. Smith testified she prepared this letter at Mr. Angle's request, because, due to the Smiths' pending bankruptcy, she did not believe she could alter the Sales Agreement without bankruptcy court approval. *See id.* at 57. Further, Mrs. Smith testified that she did not receive an accounting, as required by the Consent Agreement, from the Angles following the creation of the Consent Agreement. *See id.* at 56.

In approximately April of 2013, Mrs. Smith ordered two appraisals of the Property in an attempt to transfer the Property to her mother. *See id.* at 53-54. Mrs. Smith testified that the appraisals valued the Property at a lower value than the Smiths owed the Angles under the Sales Agreement. *See id.* at 54. Following the appraisals, Mrs. Smith contacted Mr. Angle to ask if he would sign a new agreement for a lower principle amount. *See id.*

11
R-231a

Mrs. Smith recounted that Mr. Angle did not agree to this proposal. *See id.* at 55. Subsequently, Mrs. Smith asked Mr. Angle if he would be willing to "reconsider the PA Department of Banking's new contract." *Id.* Mrs. Smith claimed Mr. Angle refused to revisit the Amended Sales Agreement because "it was not worth it for him to hold a note at that interest rate." *Id.* At that point, Mrs. Smith informed Mr. Angle that she would make plans to vacate the Property. *See id.* at 54, 63.

Mrs. Smith admitted that she did not make a monthly payment to Angle in April, July, or August of 2013. *See id.* at 50, 52. However, Mrs. Smith claimed that she paid municipal property taxes for the Property in April of 2013. *See id.* at 55. Ultimately, Mrs. Smith testified that she vacated the Property in early September of 2013. *See id.* at 50

Regarding the settlement offer, Mrs. Smith clarified that she intended to offer $500, rather than $7,500 as a settlement offer to the Angles. *See id.* at 59. Mrs. Smith reasoned that it would be easier to make a peace offering with the Angles than to continue with legal proceedings. *See id.* at 59-60. However, Mrs. Smith claimed that she never received Angle's October 16, 2013 letter accepting the $7,500 settlement offer, and was only notified of the error in the settlement offer when she received a copy of the October 15, 2013 letter from Attorney Molnar's office. *See id.* at 60.

IV.    Post-Trial Motions

On January 21, 2016, the court filed an Order of Court entering judgment in favor of Angle, and against the Smiths, in the amount of $7,740.19 plus costs and interest.  *See* Order of Court dated Jan. 21, 2016, *Angle v. Smith*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Jan. 21, 2016) ("Jan. 2016 Order").  On February 1, 2016, the Smiths filed a timely Motion for Post-Trial Relief from the Jan. 2016 Order.  *See* Motion for Post Trial [sic] Relief, *Angle v. Smith*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Feb. 1, 2016).  On March 9, 2016, the court filed an Order of Court directing the parties to file briefs relating to the Smith's Post-Trial Motions. See Order of Court dated Mar. 9, 2016, *Angle v. Smith*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Mar. 9, 2016).  The Smiths filed a brief in support of their Post-Trial Motion on April 18, 2016.  *See* Defendants' Brief in Support of Post Trial [sic] Motions, *Angle v. Smith*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Apr. 18, 2016) ("Smith Brief").  Angle filed a brief opposing the Smith's Post-Trial Motion on May 2, 2016.  *See* Plaintiff's Brief in Opposition to Defendant's Post-Trial Motion, No. C-48-CV-2014-6431 (C.P. Northampton Co. May 2, 2016).  The court denied the Smiths' Post-Trial Motion on May 24, 2016.  *See* Order of Court dated May 24, 2016, *Angle v. Smith*, No. C-48-CV-2014-6431 (C.P. Northampton Co. May 24, 2016).

13

## V.    The Smiths' Appeal

On June 21, 2016, the Smiths filed a Notice of Appeal to the Superior

Court of Pennsylvania.  *See* Notice of Appeal, No. C-48-CV-2014-6431 (C.P.

Northampton Co. Jun. 21, 2016).  On appeal, the Smiths assert that:

1.    The Trial Court erred in finding favor [sic] and entering judgment for Plaintiff, Ronald Angle, Jr. c/o Sharon Angle, in regard to the above captioned case.

2.    The Trial Court erred in finding in favor of the Plaintiff and against Defendants in the amount of Seven Thousand Seven Hundred Forty and 19/100 ($7,740.19) Dollars.

3.    From the amount of the Judgment being Seven Thousand Seven Hundred Forty and 19/100 ($7,740.19) Dollars it is believed by the Defendants that the Court found in favor of the Plaintiff and against the Defendants on the theory of quantum meruit which was set forth in the Plaintiff's Amended Complaint.

4.    The Trial Court erred in not considering that the Installment Sale Agreement was void as declared by the Department of Banking pursuant to a Consent Agreement and Order of January 18, 2013.

5.    The Trial Court erred in failing to consider that under the Installment Sales Agreement, the Plaintiff received the sum of Seven Thousand Five Hundred and 00/00 ($ 7,500.00) Dollars of liquidated damages pursuant to paragraph 10 of the Installment Sales Agreement.  This Honorable Court erred in not taking that payment into account.

6.    Further, the Trial Court erred in failing to consider that under paragraph ten of the aforesai7 [sic] agreement the monies were received and accepted as liquidated damages.

7.    The Trial Court erred in calculating the amount due for quantum meruit and failing to consider that the payments in the amount of One Thousand Three Hundred Seventy and 34/100 ($1,370.34) Dollars per month were for both principal

and interest.  In fact, the interest was, according to the Department of Banking, was [sic] excessive.

8.    The Trial Court erred in failing to consider that the Plaintiff never gave any notice to Defendants pursuant to paragraph 10 relative to any defaults.

9.    The Trial Court erred in failing to consider the fact that the Defendants did improvements and repairs to the property to the benefit of Plaintiff.  As a result, this Honorable Court failed to consider this fact in awarding an amount for quantum meruit.

10.   The Trial Court erred in failing to consider the fact that Plaintiff refused to provide them with a new contract pursuant to the Department of Banking after the Defendants were discharged from bankruptcy.

11.   In the event that any real estate taxes were included in the amount of the Verdict, the Defendants aver that the Trial Court erred in including any real estate taxes in that amount.

12.   The Trial Court erred in failing to consider the fact that the Plaintiff did not establish a fair market value for the rent of the subject premises.  Without establishing a value for the rent of the subject premises the Verdict could not be calculated as to what is owed under a theory of quantum meruit.

13.   The Trial Court erred in failing to consider the fact that the Plaintiff was not in compliance with the provisions of the Consent Agreement and Order of the Department of Banking.

14.   The Trial Court erred in failing to consider payments that the Defendant made to Plaintiff after bankruptcy.

15.   The Defendants assume that that Trial Court entered a Judgment in the amount of Seven Thousand Seven Hundred Forty and 19/100 ($7,740.19) Dollars on the basis of quantum meruit.  If the Defendants were incorrect from that assumption based on the amount entered in the Judgment, the Defendants file these post trial [sic] motions with respect to Count I in regard to the averments contained in the Answer and New Matter concerning Count I.

15

R-235a

16. The Trial Court erred in not accepting the proposed findings of fact as set forth in the Trial Memorandum with accompanying Findings of Fact of Smith.

17. The Defendants preserved all issues set forth in the Post Trial Motion, Brief in Support of Post Trial [sic] Motions and accompanying Statement of Case.

Defendants' Concise Statement of Matters Complained of on Appeal Pursuant to PA.R.A.P. 1925(b), *Angle v. Smith et al.*, No. C-48-CV-2014-6431 (C.P. Northampton Co. Jul. 15, 2016) ("Concise Statement").

## DISCUSSION

### I. Standard of Review

In reviewing a verdict entered after a non-jury trial, the Pennsylvania Superior Court's standard of review is limited to determining "whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in any application of the law." *See Wyatt Inc. v. Citizens Bank*, 976 A.2d 557, 564 (Pa. Super. 2009) (quoting *Wilson v. Transp. Inc. Co.*, 889 A.2d 563, 568 (Pa. Super. 2005). Additionally, the "findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury" and the appellate court will "consider the evidence in a light most favorable to the verdict winner." *Id.* Further, the verdict of the trial court will only be reversed "if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law." *Id.* Here, our holding involved questions of

fact and law. As discussed below, because the Verdict was based upon our credibility determinations and competent evidence in the record, it should be affirmed.

## II. Breach of Contract

To successfully maintain a cause of action for breach of contract, a party must establish: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages. *See Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. 2005) (citing *Gorski v. Smith*, 812 A. 2d 683, 692 (Pa. Super. 2002)) (additional citations omitted). Additionally, the moving party must establish a causal connection between the breach of duty imposed by the contract and the resultant damages. *See Logan v. Mirror Printing Co. of Altoona, Pa.*, 600 A.2d 225 (Pa. Super. 1991). Once a party proves breach of contract, that party is entitled to recover the damages it suffered, provided that the damages were of a type that would naturally and ordinarily result from the breach of duty imposed by the contract. *See Ferrer v. Trustees of Univ. of Pa.*, 825 A.2d 591 (Pa. 2002). To sustain this burden, a plaintiff must prove the above facts by a preponderance of the evidence. *See Snyder v. Gravell*, 666 A.2d 341, 343 (Pa. Super. 1995).

> A. *It was not an error of law to enter judgment in favor of Angle and against the Smiths under a breach of contract claim.*

In the Smiths' Concise Statement, errors one, two, and fifteen, the Smiths argue that the court erred by entering judgment in favor of Angle

17

and against the Smiths under Angle's breach of contract claim. As stated above, in order to succeed on a breach of contract claim, a plaintiff must show 1) the existence of a contract; 2) a breach of duty imposed by the contract; and 3) resultant damages. *See Hart,* 884 A.2d at 332. We find that Angle has presented sufficient and reliable evidence for every element necessary to prove her breach of contract claim beyond a preponderance of the evidence and support the verdict. Therefore, we disagree.

### i. Valid Contract

First, we find that Angle presented credible evidence that a valid contract existed between Angle and the Smiths. The elements that must be present to give rise to a valid, enforceable contract are 1) offer; 2) acceptance; and 3) consideration, or a meeting of the minds. *See Schreiber v. Olan Mills,* 627 A.2d 806, 808 (Pa. Super. 1993). An "offer" is "a manifestation of a willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *O'Brien v. Nationwide Mutual Ins. Co.,* 689 A.2d 254, 258 (Pa. Super. 1997) (additional citations omitted). Once an offer has been made, an acceptance can be found where an offeree agrees, unconditionally, to the terms of the offeror's proposal. *See United Mercantile Agencies, Inc. v. Slotsky et al.,* 182 A. 788, 788 (Pa. Super. 1936). Finally, underlying all contracts, there must be a bargained-for consideration, "defined as a benefit to the party promising, or a loss or

detriment to the party to whom the promise is made." *Schrieber*, 627 A.2d at 808.

Here, Angle introduced a letter written by Attorney Molnar, conveying a settlement offer from the Smiths, dated October 15, 2013. *See* Molnar Ltr. 1. As the Smiths' attorney, Attorney Molnar was required to receive express authority from the Smiths in order to convey this settlement offer. *See Reutzel v. Douglas*, 870 A.2d 787, 793 (Pa. 2005). The letter provides, in relevant part: "[n]otwithstanding my advice to the contrary, my clients are willing to offer Seven Thousand Five Hundred and 00/100 Dollars ($7,500) as full satisfaction in regard to this matter. This letter is offered for settlement purposes and is made without prejudice." N.T. at 41-42. The contents of the letter are clear, and manifest a willingness to enter into an offer. Therefore, we find that the October 15, 2016 letter from Attorney Molnar to the Angles constitutes an offer. See *O'Brien*, 689 A.2d at 258. While Mrs. Smith testified that she did not grant Molnar the express authority to convey $7,500 as a written settlement amount, we did not find Mrs. Smith's testimony credible in this respect. Angle testified credibly that Mrs. Smith promised to remit all of her missing payments, and based upon Angle's calculations, a settlement offer of $7,500 would be reasonable to cover the Smiths' unpaid taxes and monthly payments. *See* N.T. at 47. Therefore, because we believe that Molnar had the express authority to convey this written settlement amount, this letter serves as a valid offer.

The evidence also shows that Angle accepted the offer. Angle testified that, upon receipt of the of the October 15, 2013 letter, she "called the John Molnar Law Office and I spoke with the secretary and I said that I had received the settlement letter and that I would be accepting this offer and they told me that John Molnar would call me back." N.T. at 43. Angle's conversation with Attorney Molnar's secretary did not alter the terms of the offer, and therefore, assuming Attorney Molnar received the message, constituted a valid acceptance of the Smiths' settlement offer. *See United Mercantile Agencies, Inc. v. Slotsky et al.*, 182 A. 788, 788 (Pa. Super. 1936). Further, assuming *arguendo,* that Attorney Molnar did not receive the message from Angle accepting the offer, Angle accepted the offer by mailing a letter to the Smiths, accepting the Smiths' terms on October 16, 2013. *See* N.T. at 36; Angle Ltr.; *see also Bruner Co. v. Standard Lumber Co.*, 63 Pa. Super. 283 (1916) (holding that the acceptance of an offer is complete where the offeree places an acceptance letter in the mail); Restatement, Contracts §§ 29, 66 (finding acceptance of an offer by mail is sufficient to constitute a binding agreement). Although Angle testified that she was aware that the Smiths no longer resided at that address, she testified, credibly, that she did not have the Smiths' forwarding address, but that she believed that the U.S. Postal Service would forward the letter to the Smiths' new address. *See* N.T. at 44-45. In Pennsylvania, the "mailbox rule," *i.e.,* Angle's action in placing a prepaid, properly addressed letter in

the mail, raises a rebuttable presumption that the mailed item was received. *See Breza v. Don Farr Moving & Storage Co.*, 828 A.2d 1131, 1135 (Pa. Super. 2003). While Smith testified that she did not receive Angle's letter accepting the settlement offer, "the presumption under the mailbox rule is not nullified solely by testimony denying receipt of the item mailed." *Id.* (holding appellant's mere assertion that notice was not received, absent corroboration, is not sufficient to overcome mailbox rule presumption). Therefore, we find that either of these methods of acceptance were valid, and that Angle established her acceptance of the settlement offer by a preponderance of the evidence.

Finally, the last element in analyzing whether the settlement offer was valid is whether there was consideration underlying the agreement. Here, the consideration is properly viewed as the discharge of the Smiths' unpaid rent and property taxes. Angle's $ 7,740.19 calculation of the Smiths' liability for unpaid rent and property taxes is approximately the same amount as the $7,500 settlement offer, and clearly constitutes a bargained for exchange. *See* N.T. at 41, 47; *see also Schrieber*, 627 A.2d at 808. Therefore, we find that the discharge of this liability properly constitutes consideration, and thus, with the finding that there was a legitimate offer and acceptance, constitutes a valid contract for the purposes of analyzing a breach of contract claim.

## ii. Breach of a Duty Owed by the Contract

The terms of the settlement offer were clear. The Smiths would pay Angle $7,500, and their debt for unpaid rent and property taxes would be extinguished. *See* Molnar Ltr. 1. Therefore, their refusal to honor the agreement following Angle's acceptance constituted the breach. Further, the Smiths presented an October 24, 2013 letter from Molnar which states that "[t]he letter that I forwarded to you of October 15, 2013 contained an error. The amount is five hundred and 00/100 Dollars ($500) that my client is offering. Enclosed you will find a revised letter bearing the same date." Molnar Ltr. 2. As discussed above, we believe that the Smiths initially authorized Molnar to make a $7,500 settlement offer. However, even if, as the letter claims, the Smiths did not intend for Molnar to offer $7,500 in their *initial* settlement offer, Pennsylvania does not recognize unilateral mistake as a valid basis for rescinding a settlement offer once it is accepted by the opposing party. *See Kraemer v. Schaeffer*, 751 A.2d 241, 246 (Pa. Super. 2000). Angle accepted the Smiths' settlement offer of $7,500 on October 15, 2013. Therefore, the Smiths were not able to rescind the settlement offer, alleging a mistake, on October 24, 2013. As the Smiths have not paid the $7,500 as their settlement offer promises, they have breached the contract.

### iii. *Damages*

In a breach of contract claim, the plaintiff is also required to prove resultant damages from the breach of the contract. Damages for breach of contract should place a plaintiff in "as nearly as possible in the same position [it] would have occupied had there been no breach." *Helpin v. Trustees of Univ. of Pennsylvania*, 10 A.3 267, 270 (Pa. 2010). Further,

> [t]he determination of damages is a factual question to be decided by the fact-finder. The fact-finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of damages given by the witnesses.

> Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof.

*Omicron Systems, Inc. v. Weiner*, 860 A.2d 554, 564-565 (Pa. Super. 2004) (citing *Judge Technical Services, Inc. v. Ciancy*, 813 A.2d 879, 885 (Pa. Super. 2002)) (additional citation omitted).

Here, as discussed above, Angle presented sufficient and credible evidence to prove by a preponderance of the evidence that the Smiths breached a settlement offer promising to pay Angle $7,500. However, Angle also submitted evidence that the Smiths owed the Angles $5,481.36 for unpaid monthly payments, and $2,271.19 for unpaid taxes. *See* N.T. at 41, 47. While we could have enforced the $7,500 settlement offer set forth in the October 15, 2013, we relied instead on Angles' $ 7,752.55 calculation of

damages to craft our verdict. As our verdict of $ 7,740.19 approximately

calculates Angle's damages under either of the measures that Angle

presented, we submit that we did not err in calculating damages. *See*

*Omicron,* 860 A.2d at 564-565. Further, because we found that Angle

proved by a preponderance of the evidence that the Smiths breached the

contract, we respectfully suggest that the Smiths' claims that we erred be

dismissed.

> B. *The court did not err by finding that the Sales Agreement was valid or by failing to consider that Angle did not give the Smiths notice under the Sales Agreement.*

In the Smiths' Concise Statement, errors four and eight, the Smiths

argue that the court erred by finding that the Sales Agreement was valid and

by failing to consider that Angle did not give the Smiths notice under the

provisions of the Sales Agreement. Contrary to the Smiths' assertions, the

court agreed with the Smiths' allegation that the original Sales Agreement

was void as declared by the Consent Agreement. Therefore, all provisions of

the Sales Agreement, including the provision requiring notice to the Smiths,

have been rendered void and unenforceable by either party.

### i. Void Sales Agreement

The legal classification of a contract with illegal provisions depends

mainly upon the weight of the illegal provision. Where contracts contain

illegal provisions, they can still be enforced by the non-drafting party,

omitting the illegal provision, so long as the omission of the illegal provision

24

does not defeat the primary purpose of the bargain. *See* Restatement (Second) of Contracts § 184 (1979). Conversely, "an agreement which violates a provision of a statute, or which cannot be performed without violation of such provision, is illegal and void." *Dippel v. Brunozzi*, 74 A.2d 112, 114 (Pa. 1950). "A declaration that a contract is void nullifies all aspects of the agreement." Restatement (Second) of Contracts § 7 cmt. a. An essential aspect of a void contract is that it lacked legal existence from the moment of inception, and therefore any later judicial declaration that the contract is void clarifies, rather than alters, the relationship of the contracting parties. *See id.*

Here, the Smiths entered into the Sales Agreement with the Angles in February of 2009. *See* Sales Agreement. An important provision of the Sales Agreement was the agreement that Smiths would pay ten percent interest on the loan of $149,500 over the course of twenty years. *See* Sales Agreement. On January 18, 2013, the Angles signed the Consent Agreement with the Department of Banking and Securities. *See generally* Consent Agreement. Under the Consent Agreement, the Angles agreed to the allegations contained within the Consent Agreement. *See* Consent Agreement at ¶ 46. In paragraph 24(d) of the Consent Agreement, the Department of Banking and Securities allege that the ten percent interest rate under the Sales Agreement violated 41 P.S. § 301, which capped the interest rate at five and a quarter percent. *See* Consent Agreement at

¶ 24(d). As the ten percent interest rate is clearly an essential term in the Sales Agreement, the allegations in the Consent Agreement deemed the Sales Agreement void as of January 18, 2013. *See Dippel,* 74 A.2d at 114. Further, because the finding that a contract is void "nullifies all aspects of the agreement" after January 18, 2013, Angle was not required to give the Smiths thirty days' notice of a default under the provisions of the Sales Agreement. *See* Restatement (Second) of Contracts § 7 cmt. a.; *see also* Sales Agreement at ¶ 10. Therefore, because we found the Sales Agreement void, and therefore all provisions of the Sales Agreement unenforceable, we respectfully suggest that we did not err by failing to consider that the Sales Agreement was void and that Angle did not comply with paragraph ten of the Sales Agreement. Therefore, the Smiths' alleged errors, four and eight, should be dismissed.

C. *The trial court did not err by failing to consider the terms of the Consent Agreement and Order of the Department of Banking*

In the Smiths' Concise Statement, errors ten and thirteen, the Smiths argue that the court erred by failing to consider that Angle refused to abide by the terms and provisions of the Consent Agreement. *See* Concise Statement at ¶ 13. Specifically, the Smiths argue that we erred by failing to consider that Angle did not provide the Smiths with a new contract as required by the Consent Agreement. *See* Concise Statement at ¶ 10. However, while the Smiths argue that we erred, these allegations relied on

our determination of contested issues of fact. We submit that we accurately applied the law and determined there was competent evidence to support our decision. *See Wyatt Inc. v. Citizens Bank*, 976 A.2d 557, 564 (Pa. Super. 2009) (quoting *Wilson v. Transp. Inc. Co.*, 889 A.2d 563, 568 (Pa. Super. 2005). Therefore, we disagree with the Smiths' contentions.

i.        Credibility Determination

First, in alleged error ten, the Smiths allege that we "erred in failing to consider the fact that Plaintiff refused to provide [the Smiths] with a new contract pursuant to the Department of Banking after the [Smiths] were discharged from bankruptcy. *See* Concise Statement at ¶ 10. As the testimony of the parties differed with regards to whether the Angles presented the Smiths with a new Sales Agreement, our decision depended on the credibility of the parties' testimony. "It is well-established that the credibility of witnesses is an issue to be determined by the trier of fact." *Woods v. Cicierski*, 937 A.2d 1103, 1105 (Pa. Super. 2007). The appellate courts have determined that the trier of fact is in the best position to judge the credibility of witnesses, and therefore the appellate courts will "respect a trial court's findings with regard to credibility and weight of the evidence [after a bench trial] unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious[,] or flagrantly contrary to the evidence." *J.J. DeLuca Co., Inc. v. Toll Naval*

*Assocs.*, 56 A.3d 402, 410 (Pa. Super. 2012) (internal quotation marks omitted).

Following the Consent Agreement, the Angles were required to amend the Sales Agreement for the Property within thirty days of the Consent Agreement to bring it into compliance with the Department of Banking's regulations. *See* Consent Agreement at ¶ 42. Mr. Angle testified that he remedied the problem, and presented the Amended Sales Agreement to the Smiths for their review within the thirty day time period. *See* N.T. at 28-29. Mr. Angle recounts that the Smiths refused to sign the Amended Sales Agreement because "they didn't want the banking department heckling them and bothering them." *Id.* at 29. Further, Mr. Angle recounted that the Smiths told him they wanted to keep the existing Sales Agreement because they wanted to amend the mortgage through Mrs. Smith's mother. *See id.*

Contrary to Mr. Angle's testimony, Mrs. Smith testified that Mr. Angle had never presented her or her husband with the Amended Sales Agreement. However, Angle presented evidence in the form of a letter from Mrs. Smith, dated February 26, 2013, stating that Attorney Molnar had advised the Smiths not to make any changes to the Sales Agreement due to their pending bankruptcy. *See* N.T. at 57; *see also* Smith Ltr. Further, the Smiths' *own brief* in support of their post-trial motion alleges that Angle asked the Smiths to sign a revised contract during that time period. *See* Smith Brief at 8. Therefore, we found that in relation to the Amended Sales

Agreement, Mr. Angle's testimony was credible, and Mrs. Smith's testimony was not credible.

Further, while the Smiths argue that we should have considered that Angle was required to present them with the Amended Sales *after* they were discharged from bankruptcy, Angle was not required to do so. Mr. Angle testified credibly that he presented the Amended Sales Agreement to the Smiths and they refused to sign it. *See id.* at 29. The Smiths sent a letter to Mr. Angle stating that they could not make any changes to the contract due to the pending bankruptcy. *See* Smith Ltr. Mrs. Smith testified that she did not believe she could enter into the Amended Sales Agreement without first receiving approval from the bankruptcy court. *See* N.T. at 57. While it is a general rule that amendments to pre-existing contracts made during a pending bankruptcy violate the automatic stay provision of 11 U.S.C. § 362(a)(5), the bankruptcy court has the discretion to effectuate an amendment to a contract where a debtor proves that circumstances support that decision. *See Graziani v. Randolph*, 887 A.2d 1244, 1246·(Pa. Super. 2005). However, neither of the Smiths testified that they sought the required approval from the bankruptcy court. *See generally* N.T. Based upon this evidence, we found that the Smiths were presented with the Amended Sales Agreement within the thirty day time period and concluded that the Smiths rejected Angle's attempts to bring the Sales Agreement into compliance with the Consent decree. Therefore, because we believe that the

Smiths were presented with the Amended Sales Agreement, we respectfully submit that the Smiths' claim that we erred by failing to consider that Angle did not present the Smiths with the Amended Sales Agreement is meritless.

> ii. The Smiths did not present any evidence that Angle was not in compliance with the provisions of the Consent Agreement.

Second, in alleged error thirteen, the Smiths allege that we "erred by failing to consider the fact that [Angle] was not in compliance with the provisions of the Consent Agreement and Order of the Department of Banking." *See* Concise Statement at ¶¶ 13.   While the Smiths have not elaborated why they believe that Angle was not in compliance with the Consent Agreement, we believe that they are asserting that Angle was not in compliance with provision forty-two of the agreement, which required Angle to 1) re-execute or amend the Sales Agreement within thirty days to bring it into compliance with the Department of Banking's rules and regulations; and 2) provide a full accounting to each buyer no less than once a year.

As discussed above, we found that Mr. Angle created an Amended Sales Agreement to comply with the provisions of the Consent Agreement, and presented it to the Smiths prior to the thirty day time limit. *See* N.T. at 29.  Further, while the Smiths may argue that Angle was not in compliance with the Consent Agreement because they did not receive an accounting from the Angles, the Smiths vacated the Property in October of 2013, less than one year after the Consent Agreement was created. *See id.* at 56.

Because the Consent Agreement only requires the full accounting once a year, the Smiths cannot validly claim that Angle did not abide by the Consent Agreement by failing to produce a full accounting within a nine month time period. Therefore, because the Smiths did not produce any credible evidence that Angle did not abide by the terms of the Consent Agreement, it is axiomatic that we could not have erred by failing to consider Angle's breach of these terms. Therefore, we respectfully submit that the Smiths' alleged error thirteen should be dismissed.

### III. Quantum Meruit

Assuming *arguendo*, that Angle's claim for breach of contract fails because the settlement offer does not constitute a valid contract, we find that Angle's claim for *quantum meruit* also succeeds. *Quantum Meruit* is a claim that a plaintiff can pursue when a claim "sounding in breach of express contract is not available." *Zawada v. Pa. Sys. Bd. of Adjustment*, 140 A.2d 335, 338 (Pa. 1958). *Quantum meruit* is essentially a claim for unjust enrichment, which "implies a contract [and] requires the defendant to pay to the plaintiff the value of the benefit conferred." *Durst v. Milroy*, 52 A.3d 357, 360 (Pa. Super. 2012). In a *quantum meruit* action, the plaintiff must prove: (1) [the] benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

See *id.* The application of the doctrine depends on the particular factual circumstances of the case at issue. *Schneck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. 1995).

"In determining if the doctrine applies, the focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Id.* To recover under a *quantum meruit* cause of action, the plaintiff must demonstrate that the defendant either wrongfully, or passively, received a benefit that it would be unconscionable for the defendant to retain. *See Limback Co., LLC v. City of Philadelphia*, 905 A.2d 567, 575 (Pa. Commw. 2006). Further, "[w]here unjust enrichment is found, the law implies a quasi-contract which requires the defendant to pay to plaintiff the value of the benefit conferred. In other words, the defendant makes restitution to the plaintiff in quantum meruit." *Lackner v. Glosser*, 892 A.2d, 34 (Pa. Super. 2006) (quoting *AmeriPro Search, Inc. v. Fleming Steel Company*, 787 A.2d 988, 991 (Pa. Super. 2001)).

> A. *It was not an error of law to enter judgment in favor of Angle and against the Smiths under the theory of* quantum meruit.

In the Smiths' Concise Statement, errors one, two, three, and twelve, the Smiths argue that the court erred by entering judgment in favor of Angle and against the Smiths under the theory of *quantum meruit*. Based upon the record before the court, it is respectfully submitted that it was not an error of law to enter judgment in the amount of $7,740.19 in favor of Angle on the basis of *quantum meruit*.

Through the Sales Agreement and Mr. Angle's testimony, Angle proved that the Angles conferred a benefit in the form of home ownership upon the Smiths. Due to previous financial difficulties, Mrs. Smith acknowledged that the Smiths could not have afforded to purchase a home without the Sales Agreement offered by Angle. *See* N.T. at 63-64. Following the admissions in the Consent Agreement which rendered the Sales Agreement void, the Angles conferred a benefit on the Smiths by allowing them to continue to reside in the Property without a formal agreement. The Smiths appreciated this benefit by residing in this Property for a period of four months without paying property taxes or monthly payments for the Property. *See id.* at 41, 47. When confronted with the missing monthly payments in June of 2013, Mrs. Smith promised Angle that she would remedy all of the missing payments. *See id.* at 40. The Smiths did not honor Mrs. Smith's promise to Angle. *See id.* at 41, 47. Angle demonstrated that the Smiths appreciation of this benefit was unjust because the Smiths wrongfully received four months of free housing from the Angles. *See Limback,* 905 A.2d at 575. Therefore, because Angle has proven the benefit of housing conferred on the Smiths by Angle, the appreciation of the benefit of free housing by the Smiths, and the acceptance and retention of the free housing under unfair circumstances, we respectfully submit that we did not err in finding in favor of Angle on the *quantum meruit* count. As such, we respectfully submit that the Smiths alleged errors, one, two, three, and twelve, should be denied.

B. *The court did not err in calculating the Smiths' liability to Angle under the theory of* quantum meruit.

In the Smiths' Concise Statement, the Smiths allege through errors five, six, seven, nine, eleven, and fourteen that the court erred in calculating the Smiths' liability to Angle under the theory of *quantum meruit*. Based upon the record before the court, we disagree.

The Pennsylvania Superior Court reviews a challenge to the calculation of damages under an abuse of discretion standard. *See Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 937 A.2d 503, 516 (Pa. Super. 2007), *aff'd*, 983 A.2d 652 (Pa. 2009). When reviewing an award of damages, the Pennsylvania Superior Court is mindful that:

> [t]he determination of damages is a factual question to be decided by the fact-finder. The fact finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of damages given by the witnesses.
>
> Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. The fact-finder may make a just and reasonable estimate of the damages based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof.

*Id.* at 514 (internal citations omitted).

        i.      Liquidated Damages Under the Sales Agreement and Home Improvements

Through alleged errors, five, six and nine, the Smiths allege that we erred by failing to consider that that the Smiths expended money in relation to the Property in calculating damages. Specifically, the Smiths alleged that

we failed to consider that Angle retained the Smiths' $7,500 down payment on the Property as liquidated damages under the Sales Agreement, and that the Smiths expended $5,000 in home improvements to the Property while they resided there. *See* Concise Statement at ¶¶ 5, 6, 9. We disagree with the Smiths contention that we should have considered these elements in calculating liability under a theory of *quantum meruit*.

As discussed above, a plaintiff's success under a theory of *quantum meruit* requires the defendant to pay to plaintiff the value of the benefit conferred. *See Lackner v. Glosser*, 892 A.2d, 34 (Pa. Super. 2006) (quoting *AmeriPro Search, Inc. v. Fleming Steel Company*, 787 A.2d 988, 991 (Pa. Super. 2001)). We could not find any case law to support the Smiths' contention that previous monetary expenditures by the Smiths related to the Property should be deducted from the calculation of the value of the benefit the Smiths received by living in the Property for four months without making their monthly payments or paying taxes. Additionally, while the law supports a tenant's recovery for improvements made to the property of another through a claim for *quantum meruit*, the Smiths did not bring a claim or counter-claim against Angle to recover these expenditures in *quantum meruit*. *See generally Chesney v. Stevens*, 644 A.2d 1240, 1243-44 (Pa. Super. 1994) (stating that tenant can recover for home improvement made to landlord's property).

Further, assuming *arguendo*, that Angle's award under the theory of *quantum meruit* should be reduced by the amount of the down payment and/or home improvements, the Smiths did not present sufficient evidence at the time of trial for the court to adjust Angle's award accordingly. Mrs. Smith claimed to have made $5,000 in home improvements to the Property. *See* N.T. at 56. However, as discussed above, we did not find Mrs. Smith's testimony credible. Mrs. Smith provided no corroborating evidence in the form of receipts for the home improvements, or pictures from which Mrs. Smith's testimony could be corroborated. *See generally id.* Additionally, the fact that Mrs. Smith testified that the two appraisals of the Property valued the home at a lesser value following the Smiths' alleged improvements, than the price at which the Smiths purchased the Property, supports the contention that Mrs. Smith did not accurately calculate the amount the Smiths spent to improve the Property. *See id.* at 54. Further, the Smiths did not present any evidence regarding the Angles' retention of the $7,500 down payment after the Sales Agreement was rendered void. *See generally id.* Therefore, because case law does not require that an award in *quantum meruit* consider outside expenditures, and because the Smiths did not provide credible evidence of the outside expenditures they believe should be included in the calculation of damages, we respectfully submit that we did not err, and that the Smiths' alleged errors, five, six, and nine should be denied.

## ii.    Monthly Payments and Real Estate Taxes

Through alleged errors seven and eleven, the Smiths claim that we erred in calculating the amount due to Angle under the theory of *quantum meruit* by including real estate taxes in the verdict and by failing "to consider that the payments in the amount of [$1,370.34] per month were for both principal and interest.  In fact, the interest was, according to the Department of Banking was [sic] excessive." *See* Concise Statement at ¶¶ 7, 11.  However, we carefully calculated the amount due based upon Angle's success on the *quantum meruit* claim by assessing the testimony, determining that Angle's testimony was credible, accepting Angle's calculations that the fair rental value for the Property approximated $1,370.34, and by crediting the course of conduct of the parties following the declaration that the Sales Agreement was void in January of 2013.  *See Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 937 A.2d 503, 516 (Pa. Super. 2007), *aff'd*, 983 A.2d 652 (Pa. 2009).  Therefore, we disagree with the Smiths' assertions.

As discussed above, following the Consent Agreement of January 18, 2013, the provisions of the Sales Agreement were void and could not be enforced against the Smiths.  However, Angle testified that the Smiths continued to make the monthly payments of $1,370.34 in February, March, April, and May of 2013.  *See* N.T. at 39.   Mrs. Smith verified that she continued to make payments in this amount, and also stated that she paid

taxes related to the Property in April of 2013. *See id.* at 50-52. As the finder-of-fact we were entitled to weigh this testimony, and we determined that Mrs. Smith's course of conduct in abiding by the terms of the Sales Agreement, even after it had been rendered void, set the fair market value for rental payments at $1,370.34. Additionally, because Mrs. Smith paid taxes related to the Property in April of 2013, we inferred that Mrs. Smith accepted that, as it had been under the Sales Agreement, she was required to pay the taxes associated with the Property. Therefore, because we calculated damages by assessing the testimony, weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of damages given by the witnesses, we submit that we properly calculated the damages owed to Angle under the theory of *quantum meruit*. *See Liss & Marion,* 937 A.2d at 516. Thus, we respectfully submit that the Smiths' alleged errors, seven and eleven, should be denied.

iii.    Payments Following Bankruptcy

Finally, through alleged error fourteen, the Smiths allege that we erred by failing to consider payments that the Smiths made to Angle after they were discharged from bankruptcy. As the testimony of the parties differed with regards to the amount of monthly payments the Smiths remitted to Angle following their discharge from bankruptcy, our decision depended on the credibility of the parties' testimony. "It is well-established that the credibility of witnesses is an issue to be determined by the trier of fact."

*Woods v. Cicierski*, 937 A.2d 1103, 1105 (Pa. Super. 2007). The appellate courts have determined that the trier of fact is in the best position to judge the credibility of witnesses, and therefore the appellate courts will "respect a trial court's findings with regard to credibility and weight of the evidence [after a bench trial] unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious[,] or flagrantly contrary to the evidence." *J.J. DeLuca Co., Inc. v. Toll Naval Assocs.*, 56 A.3d 402, 410 (Pa. Super. 2012) (internal quotation marks omitted).

Here, Angle testified that the Smiths resided in the Property without making monthly payments in June, July, August, and September of 2013. *See id.* at 41, 47. Further, Angle testified that the Smiths did not pay the taxes associated with the Property in 2013. *See id.* Pursuant to Angle's recollection, the Smiths vacated the Property in October of 2013. *See id.* Conversely, Mrs. Smith testified that she did not remit monthly payments to Angle in May, July, or August of 2013. *See id.* at 50, 52. Additionally, Mrs. Smith claimed that she vacated the Property in the first week of September. *See id.* at 50. Besides their testimony, neither party presented evidence that corroborated the months that the Smiths did not remit payments, or the month that the Smiths vacated the property. *See generally id.* However, based upon our prior findings that the testimony of Mrs. Smith was not credible, and that the testimony of Angle was credible, we are inclined to

believe Angle's timeline of events. Through the course of the trial, Mrs. Smith presented a series of statements that were contradicted by previous evidence, and we do not believe that she presented truthful evidence concerning how the Smiths left the Property, and the timeline under which they vacated the Property. Therefore, because we find that Angle's testimony to be credible, which provides that the Smiths remitted only one payment following their discharge from bankruptcy was credible, our calculation based upon a credibility determination should not be disturbed on appeal. *See J.J. DeLuca,* 56 A.2d at 410. Thus, we respectfully submit that we did not err by failing to consider payments that the Smiths made to Angle after they were discharged from bankruptcy, and request that the Smiths' alleged error fourteen, be denied.

## CONCLUSION

For the reasons set forth above, we respectfully suggest that the Smiths' appeal lacks merit and should be dismissed.

BY THE COURT:

MICHAEL J. KOURY, JR., J.

40
R-260a